UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:08-CR-4-FL

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| | ) |
| JERVON W. MCGILBERRY, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the Motion to Suppress [DE-26] of defendant Jervon

W. McGilberry ("Defendant"). The government has responded, [DE-30], and the court held an

evidentiary hearing on September 15, 2008 to develop the record. At the hearing, the court heard

testimony from Sergeant Gary Bray and Master Patrol Officer Paul Perry, officers with the

Elizabeth City Police Department. Accordingly, this matter is ripe for review.

## STATEMENT OF THE FACTS

Defendant is charged with possession with the intent to distribute more than five (5)

grams of cocaine base (crack) in violation of 21 U.S.C. § 841(a)(1). Defendant was arrested on

September 21, 2007 after officers of the Elizabeth City Police Department searched him and a

Chevrolet Avalanche as part of a surveillance operation. Defendant asserts that the officers

performed a warrantless search of him and the vehicle without probable cause and, accordingly,

that all evidence seized by law enforcement as a result of the search should be suppressed.

A.    Sergeant Gary Bray

Sergeant Gary Bray ("Bray") testified at the suppression hearing. Bray has been

employed by the Elizabeth City Police Department for nine years and has been in charge of the

police department's drug and gang unit for the past four years. Bray has participated in over two hundred fifty (250) narcotics investigations. As manager of the gang and drug unit, Bray receives complaints from community watch groups regarding illegal drug activity. With respect to the incident in this case, Bray received a complaint of drug activity occurring in the area of the 900 block of Cale Street in Elizabeth City. Bray is otherwise familiar with this area of town as it is a known area of illegal drug activity.

In response to the complaint, Bray decided to conduct surveillance of the 900 block of Cale Street to determine if illegal drug activity was indeed taking place and if so, to determine the identity of the persons involved. Bray drove to the area in an unmarked patrol car and positioned himself in a graveyard located at the end of Cale Street so that he had an unobstructed view of the street. To assist him in his surveillance, Bray used a pair of binoculars. The time of surveillance was 6:45 p.m. and, according to Bray, there was sufficient daylight to observe the area.

Upon surveillance, Bray immediately recognized a blue 2004 Chevrolet Avalanche known by Bray as having been operated by defendant on several occasions, which was parked on the side of Cale Street facing Bray's position. Bray had in fact seen defendant drive the vehicle two or three days before his surveillance. Bray also recognized the defendant whom he saw standing in the street and in the yard area of 902 Cale Street. Bray knows defendant through defendant's previous drug-related arrests.

Bray testified that on at least ten occasions, throughout the course of his surveillance, he observed defendant approach vehicles that had pulled up to the area of 902 Cale Street, and go

2

over to the driver or passenger side of each vehicle.[1] Defendant would then lean down into the vehicle placing his head and arms inside the vehicle. After thirty to forty seconds, defendant would then walk to the passenger side of the Chevrolet Avalanche, open the door and lean inside to the center console area of that vehicle. While Bray could not see defendant's hands inside the Chevrolet Avalanche, he could see the position of defendant's body at the center console area of the vehicle. After thirty to forty seconds, defendant would then return to the other vehicle in the street and lean down into each vehicle for several seconds.

In addition to defendant, Bray witnessed five to six other individuals in the yard area at 902 Cale Street. Bray observed a second black male make what appeared to be several hand-to-hand drug transactions with an individual on a blue bicycle.

In the course of his surveillance, Bray saw defendant pull out what appeared to be a large amount of money and count it while standing in the street.[2] After several cars had departed the area, it appeared to Bray that defendant was supplementing money to that amount he already had and was placing the money into his pocket. Bray observed defendant's actions for over one hour. Based on his experience as a narcotics investigator, Bray believed defendant was engaged in the hand-to-hand sale of illegal narcotics.

---

[1] On cross-examination, defense counsel queried Bray regarding his testimony at defendant's detention hearing at which Bray testified he witnessed defendant approach four or five vehicles. On redirect examination, however, Bray testified to having written a report contemporaneously to his observations, which indicates defendant approached at least ten vehicles. Although the court finds Bray's testimony credible, the court believes that whichever figure were accepted would support the court's ultimate determination.

[2] While Bray testified he saw defendant count money 2-3 times, at the detention hearing Bray testified that he saw him count the money once, although Bray saw defendant in possession of money several times during the course of his surveillance. This distinction has little significance under the circumstances to the court's ultimate conclusion.

3

In response to defendant's behavior, Bray called Paul Perry, an officer with the gang and drug unit and SWAT member. Bray identified defendant by name to Perry and described defendant's behavior. He also advised Perry of the other black male he had seen conducting what appeared to be hand-to-hand drug transactions. Bray asked Perry to bring the SWAT team into the area and investigate. Bray instructed Perry to search defendant and the other black male whom he observed at the scene, and to search the center console of the Chevrolet Avalanche. Bray testified that he wanted Perry to check the subjects he had identified for illegal drugs.

Approximately eight to nine minutes after Bray spoke with Perry, the SWAT team arrived on scene. Bray observed their arrival from his vantage point. He witnessed that as the officers exited their vehicles, persons in the yard began either laying or crouching on the ground. No weapons were drawn by police officers and no one appeared to be forced to the ground. The officers searched the people by patting them down, frisking the outside of their clothing. Bray saw no one search the inside of anyone's clothing. Through his binoculars, Bray saw Perry go directly to the Avalanche and open the door. According to Bray, Perry did not enter the vehicle. Approximately thirty to forty seconds later, Bray received a call from Perry advising that Bray should arrive on scene and that defendant was in possession of a large amount of money.

Bray arrived on scene and was directed by Perry to the center console of the Avalanche. Located in the console, Bray saw a white bag with a large amount of rock-like substance and what appeared to be digital scales. These items were located in an area of the console that was hidden by a cup-holder, which Perry had removed, yet which appeared to have been removed several times. In response to finding these items, Bray advised members of the SWAT team to arrest defendant.

4

At no time did Bray see any firearms or other weapons on any of the individuals he observed, nor did Bray see anything resembling drugs or drug packaging; the only thing Bray saw was money, which he observed several times to be in defendant's possession. Ultimately, defendant was found to be in possession of seven hundred thirty-one dollars.

B.    Officer Paul Perry

Officer Perry has been employed as a drug agent with the Elizabeth City Police Department for approximately eight years. On September 21, 2007, he was contacted by Sergeant Bray to investigate what Bray had observed to be illegal drug activity in the 900 block of Cale Street.

Bray told Perry he was observing defendant make several drug transactions during his surveillance. Specifically, he told Perry he had seen defendant move back and forth between vehicles in the street and the center console area of a blue Chevrolet Avalanche numerous times during these transactions. Perry knows defendant as he has investigated defendant in the past in relation to controlled-substance activity and had in fact arrested him a couple of times previously. Bray also advised Perry of a second black male in the same area making what appeared to be hand-to-hand drug transactions. Bray instructed Perry to investigate what Bray had been observing to see if he could find any controlled substances.

Perry arrived on the scene with approximately five other SWAT members in both marked and unmarked vehicles without lights or sirens activated. As he arrived, Perry noticed four to five persons in the yard area of 902 Cale Street described by Bray. As the SWAT members exited their vehicles, all persons in the yard area were either sitting or crouching toward the ground. No one ordered the persons to the ground nor were any police weapons drawn. Perry

5

did not see any weapons on anyone in the yard. None of these people acted in a threatening manner nor did they appear to be a risk to the officers' safety.

After exiting his vehicle, Perry went directly to the Chevrolet Avalanche and searched the center console area as identified by Bray. He noticed a center console with a cup-holder. It was apparent to Perry that the cup-holder had been removed several times. He removed the cup-holder exposing a compartment within the console. He immediately observed a plastic bag of containing a rock-like substance and a set of digital scales. Perry then called Bray and advised him to arrive on scene.

## DISCUSSION

Defendant has moved to suppress all evidence seized as a result of the warrantless search of defendant and the Chevrolet Avalanche on the grounds that the police did not have probable cause to search. [DE-26]. The government contends probable cause exists to support the search of the evidence located on defendant's person and within the vehicle. [DE-30].

The determination of whether probable cause exists depends on the totality of the circumstances and involves a practical, common-sense decision whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. *United States v. Ornelas*, 517 U.S. 690, 696 (1996); *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Because probable cause is a fluid concept - turning on the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules, *Gates*, 462 U.S. at 232, due weight is given to the inferences drawn from an officer's practical experience and the inferences the officer may draw from that experience. *Ornelas*, 517 U.S. at 699-700; *see also United States v. Dickey-Bey*, 393 F.3d 449, 453 (4th Cir. 2004) ("Under this pragmatic, common

6

sense approach, [deference is given] to the expertise and experience of law enforcement officers at the scene.") (citation omitted). A suspect's criminal activity or record is material to the probable cause determination. *United States v. Bynum*, 293 F.3d 192, 197-98 (4th Cir. 2002) (citations omitted); *United States v. Miller*, 925 F.2d 695, 699-700 (4th Cir. 1991) (officer's knowledge that defendant had been involved in illegal narcotics in the past based on prior arrest corroborated tip and supported finding of probable cause). While each fact standing alone may be insufficient, the combination of all of the facts can establish probable cause, *United States v. Catlett*, 97 F.3d 565, 574 (D.C. Cir. 1996); *United States v. Halliman*, 923 F.2d 873, 881 (D.C. Cir. 1991), and certain conduct that may appear "innocent to a lay person may have entirely different significance to an experienced narcotics officer." *Catlett*, 97 F.3d at 573-74 (quoting *United States v. Hicks*, 752 F.2d 379, 384 (9th Cir. 1985)).

A.    Search of Defendant

The search of defendant was supported by probable cause. As manager of the drug and gang unit of the Elizabeth City Police Department, Sergeant Bray receives complaints from community watch organizations regarding suspected illegal drug activity in Elizabeth City. In response to a complaint of such activity in the 900 block of Cale Street, an area known for illegal drug activity, Bray undertook to investigate. Bray observed the defendant, whom he recognized and knew as a prior drug offender, move back and forth between random vehicles driving through and stopping on Cale Street. Bray observed the defendant lean down into such vehicles for several seconds, walk to the center console area of a Chevrolet Avalanche parked nearby, then return to the stopped vehicle, again leaning down into the vehicle for several seconds. In addition, Bray saw defendant with a large sum of money to which he continued to supplement

7

throughout the period of observation, which lasted over one hour. Bray testified that based on his experience as a police officer for nine years and drug agent for four years, and having participated in over two hundred fifty narcotics investigations, defendant's actions were consistent with that of conducting illegal drug transactions.

While defendant contends that probable cause cannot be found to exist because defendant was not observed with any suspected drugs, the establishment of probable cause does not require that the officer wait until he has observed all elements of a crime before taking action. *See United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998) ("While probable cause requires more than 'bare suspicion,' it requires less than the evidence necessary to convict.") (citing *Brinegar v. United States*, 338 U.S. 160, 175 (1949)); *see Gerstein v. Pugh*, 420 U.S. 103, 121 (1975) (probable cause determination "does not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands"); *see also United States v. Funches*, 327 F.3d 582, 586-87 (7th Cir. 2003) (Without observing the presence of drugs, agents had probable cause to believe the exchange of shopping bags in alley was a drug transaction where agents with extensive experience could recognize actions as common characteristics of a drug transaction.); *see also United States v. Hardwell*, 80 F.3d 1471, 1490 (10th Cir.1996) (An individual's possession of large amounts of cash tends to show involvement in drug distribution because it is among the tools of the trade of drug traffickers.) (citation omitted). Here, Sergeant Bray was alerted to an to area of town by a community watch group from which the police department, and Bray in particular, receives information of suspected drug activity. The suspected activity was occurring in an area of town known as a drug neighborhood. Bray observed the defendant, whom he recognized by sight and whom he (and Perry) knew to have

8

committed drug crimes in the past, conducting suspicious activity which, based on Bray's extensive experience as a drug investigator, matched the actions of an illegal narcotics sale. Bray's response to defendant's actions was not based on bare suspicion. Rather, the response was based on the totality of the circumstances, including Bray's knowledge of the defendant and the area in which defendant was observed, defendant's actions, and the inferences drawn by Bray from observing defendant based on his expertise.

B.     Search of the Chevrolet Avalanche

Probable cause to search exists where there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. The "automobile exception" to the warrant requirement allows a warrantless search "[i]f a car is readily mobile and probable cause exists to believe it contains contraband." *Maryland v. Dyson*, 527 U.S. 465, 467 (1999); *see United States v. Carter*, 300 F.3d 415, 421-22 (4th Cir. 2002) (recognizing the inherent mobility of automobiles and danger that contraband inside car may disappear if police take time to obtain warrant). If such probable cause exists, the officers may conduct a search as thorough as a magistrate may authorize in a warrant. *United States v. Ross*, 456 U.S. 798, 800 (1982). Thus, the scope of the search is defined by the object of the search and the places in which such an object may be concealed. *Id*. at 824.

Here, the officers had probable cause to believe that there was evidence or contraband in the Chevrolet Avalanche based on the totality of the circumstances - Bray's observations of defendant's actions going back and forth between the Avalanche and random vehicles stopping along Cale Street, Bray's (and Perry's) personal knowledge of defendant as a previous drug offender, and the fact that defendant had a large sum of money in his possession and was in a

9

high drug area. *See Hardwell*, 80 F.3d at 1490. Consequently, the officers had probable cause to believe that they would find drugs in the vehicle. *See Ross*, 456 U.S. at 800, 824. Moreover, Bray testified he was familiar with the vehicle having seen defendant drive the Chevrolet Avalanche recently and that the vehicle appeared readily mobile. Based on this unchallenged testimony, Bray would not have been required to delay his search in order to obtain a warrant to search the vehicle. *See Carter*, 300 F.3d at 421-22. The warrantless search of the Chevrolet Avalanche was therefore permissible.

## CONCLUSION

For the reasons set forth above, the court RECOMMENDS that defendant's Motion to Suppress be DENIED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation. Additionally, except upon grounds of plain error, failure to timely file written objections shall bar a party from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 23rd day of September, 2008.

Robert B. Jones, Jr.
United States Magistrate Judge

10