IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:08-CR-4-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JERVON W. McGILBERRY, | ) | ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

This matter is before the court on defendant's motion to suppress (DE # 26), filed on July 30, 2008. United States Magistrate Judge Robert B. Jones, Jr. conducted an evidentiary hearing on September 15, 2008, pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge entered a Memorandum and Recommendation ("M&R") on September 23, 2008 (DE #42), recommending that defendant's motion be denied. Defendant timely filed objections to the M&R on October 3, 2008.[1] (DE #45). The government did not respond to defendant's objections. This matter is now ripe for ruling.

BACKGROUND

Defendant is charged with possession with the intent to distribute more than five (5) grams of cocaine base (crack) in violation of 21 U.S.C. § 841(a)(1). On September 21, 2007, officers of the Elizabeth City Police Department arrested defendant following a search of his person and a 2004

---

[1] Defendant filed these objections through counsel Mark Ward, who also represented defendant at the evidentiary hearing. On October 24, 2008, this court granted Ward's motion to withdraw as attorney of record in this matter, as consented to by defendant. On October 30, 2008, Assistant Federal Public Defender Joseph L. Ross II filed a notice of appearance for defendant.

Chevrolet Avalanche. Defendant contends that these searches were performed in violation of the Fourth Amendment, and thus the evidence seized by law enforcement should be suppressed.

On September 21, 2007, in response to a complaint of drug activity in the area from a community watch group, Sergeant Gary Bray was conducting surveillance of the 900 block of Cale Street. Bray has been with the Elizabeth City Police Department for nine years, and in charge of the drug and gang unit for the past four years. In those four years, he has participated in over two hundred fifty (250) narcotics investigations. At the suppression hearing, Bray identified that block of Cale Street as a "known area of narcotics activity." (Supp. Hearing Trans., p. 6).

Bray conducted his surveillance from an unmarked car parked in a graveyard at the end of the street. While in the car, Bray used binoculars to observe activity on the 900 block. The events leading to defendant's arrest took place at approximately 6:45 p.m., when, according to Bray, there was plenty of light for observation. (Supp. Hearing Trans., p. 8). Bray saw defendant standing in the street and in the yard area of 902 Cale Street, and recognized him from previous drug-related arrests. He also recognized a 2004 Blue Chevrolet Avalanche parked nearby as the car he had seen defendant driving several times, the most recent being two or three days before the day of the arrest.

On numerous occasions over a period of about an hour, Bray saw defendant approach a vehicle that had pulled up and spend 30 to 40 seconds at either the driver's or passenger's side area with his hands inside the vehicle.[2] Defendant would then walk to the passenger's side of the Chevrolet Avalanche and lean into the vehicle, so that his arms and body were near its center, again

---

[2] At the suppression hearing, Bray estimated that this occurred about 10 times over the hour, which he testified is what he wrote down in the report when the event occurred. (Supp. Hearing Trans. 13-14, 52). On cross-examination at the suppression hearing, defendant drew Bray's attention to his testimony at defendant's detention hearing, in which he stated he saw four or five transactions. (Det. Hearing Trans., 14). The court's probable cause determination does not hinge on the exact number of times this event recurred, and so the court acknowledges this discrepancy but does not find it affects the outcome of this order.

only staying in that position for 30 to 40 seconds. Bray saw defendant in possession of what appeared to be a large sum of money several times, and saw him count that money while standing on the street. Several times after defendant had approached a car that pulled up, Bray observed defendant add money to the amount he was already carrying. Bray saw another individual standing in the yard with defendant engaging in what appeared to be a hand-to-hand drug transaction with a man on a blue bicycle. Bray never saw anything that appeared to be drugs or contain drugs, but after observing defendant's actions for over an hour, from his experience he believed that defendant was engaging in hand-to-hand drug transactions.

In light of this belief, Bray called Paul Perry, a drug agent and SWAT member for Elizabeth City, whose team was in the area. Perry also knew defendant as he had investigated him in the past in relation to controlled substance activity. Bray informed him of defendant's activity and said he thought defendant was selling some kind of illegal narcotic. Bray told Perry to go to the 900 block to investigate, specifically telling him to go to the center console of the Chevrolet Avalanche. Perry arrived at the area with approximately five other members of the SWAT team. The police did not draw their weapons, nor did they order anyone to the ground; nevertheless, defendant and the people in the yard with him were sitting or going to the ground as the officers approached.

Members of Perry's team conducted pat-down searches of people in the yard. Defendant was among those searched, and the police found $731 in his pocket.[3] Perry went to the Chevrolet

---

[3] Defendant objected to the factual finding in the M&R that the defendant was searched and US currency was seized from him. The objection to the finding that defendant was searched is somewhat puzzling given that defendant argues in the motion to suppress that the search of his person violated his 4th amendment rights. Nevertheless, upon *de novo* review of the factual record, the court finds Bray's testimony to be credible and to support the finding that the police searched defendant and found $731 on his person. (Supp. Hearing Trans., pp. 17, 43). It is not clear from the record whether defendant or the car was searched first, or whether the searches occurred simultaneously; however, the court does not base its determination of probable cause for either search on information gained from the other search.

3

Avalanche and looked to the center console. He testified it was "immediately apparent" that the cup holder had been removed several times. (Supp. Hearing Trans., p. 66). Perry removed the cup holder and found a plastic bag with a rock-like substance and a pair of digital scales in the compartment below. Perry called Bray to the area, and Bray advised one of the members of the SWAT team to arrest the defendant.

## DISCUSSION

The M&R concluded that the foregoing events gave the officers probable cause to support the search of the defendant's person and the vehicle. In objecting to both these findings, defendant incorporates arguments made in the memorandum supporting the motion to suppress and at the suppression hearing, but does not provide further argument. The court makes a *de novo* determination of those portions of the M&R to which objection is made, and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Probable cause exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." Ornelas v. United States, 517 U.S. 690, 696 (1996). "A police officer may draw inferences based on his own experience in deciding whether probable cause exists." Id. at 700. A police officer's knowledge of a suspect's past involvement with illegal narcotics is material to the probable cause determination. See United States v. Miller, 925 F.2d 695, 699-700 (4th Cir. 1991). Probable cause requires more than a "bare suspicion," but less than the evidence necessary to convict. United States v. Gray, 137 F.3d 765, 769 (4th Cir. 1998). An officer's determination that probable cause is present is reviewed under a "totality of the circumstances" test. Illinois v. Gates, 462 U.S. 213, 238 (1983).

Bray was conducting surveillance on September 21, 2007, because he received a complaint of drug activity occurring in an area known for such behavior. Bray observed defendant, whom he recognized from previous drug-related arrests, walk back and forth between vehicles that approached and the parked Chevrolet Avalanche. When defendant went to the Avalanche, he would lean in toward the center console. Bray saw defendant with a large sum of cash, and saw defendant add to that sum and count it after visiting some of the vehicles that pulled up. Bray testified that in his experience as a narcotics officer, defendant's actions indicated to him that defendant was selling "some type of illegal narcotic." (Supp. Hearing Trans., p. 15).

In <u>United States v. Funches</u>, the Seventh Circuit found that even though officers never actually saw drugs, they had probable cause from observing an exchange that agents with their experience would recognize as having several common characteristics of a drug transaction. 327 F.3d 582, 586-87 (7th Cir. 2003). In that case, the investigating officers observed only a single transaction that was significantly more complex and covert than the transactions Bray observed here, but the court nevertheless found sufficient evidence to support probable cause. In this case, Bray, an experienced officer in narcotics investigation, repeatedly observed essentially every aspect of the drug transaction except for getting a view of the actual contraband. He saw the suspect move back and forth between cars that pulled up and the center console of the Avalanche, and saw defendant count and add to a large sum of cash. See <u>United States v. Puche-Garcia</u>, 230 F.3d 1356, *4 (4th Cir. Sept. 13, 2000) ("The carrying of unusually large amounts of cash can help to establish the link to drug activity."). Further, he knew the suspect to have been involved in past drug activity, and was conducting surveillance based on a report of drug activity in the area. Accordingly, the court finds that the combination of all evidence available to Bray indicates the search of defendant was

5

supported by probable cause.

Defendant objects to the finding in the M&R that "probable cause and exigent circumstances existed to justify the warrantless search of the Chevrolet Avalanche." (Deft's Obj. to M&R, p. 1). However, the M&R did not identify an exigent circumstance in invoking the automobile exception, nor did it need to. See Maryland v. Dyson, 527 U.S. 465, 466 (1999) ("[T]he automobile exception has no separate exigency requirement."). Rather, the Fourth Amendment permits police to search a car without a warrant if it is "readily mobile and probable cause exists to believe it contains contraband." Pennsylvania v. Labron, 518 U.S. 938, 940 (1996). Bray saw defendant drive the vehicle only a few days before the arrest date, and so he knew it was readily mobile. Furthermore, probable cause existed to suspect the vehicle contained contraband for all the reasons probable cause existed to search defendant: Bray's observations of defendant conducting the transactions, his knowledge of defendant's prior involvement in drug activity, his insight from his experience as a police officer, and the recent complaint of drug activity in the specific area. That the vehicle was parked and unoccupied does not take it out of the scope of the automobile exception. See United States v. Brookins, 345 F.3d 231, 234, 238 (4th Cir. 2003) (finding the search of an unoccupied pickup truck parked in a driveway fell within the scope of the automobile exception as the truck was "clearly operational" and officers had probable cause to believe contraband was in the vehicle).

The right to search under the automobile exception extends to both "an automobile and the containers within it where [police] have probable cause to believe contraband or evidence is contained." California v. Acevedo, 500 U.S. 565, 580 (1991). To the extent that removing the cup holder to view the compartment in the console underneath constituted a search of a container, such a search was permissible under Acevedo. Probable cause existed to search for drugs, which could

plausibly be concealed in such a compartment. Furthermore, Bray saw defendant lean his arms and body toward the center console of the Avalanche when he would make trips to it during the transactions.

For these reasons, the court accepts in whole the magistrate judge's well-considered findings and recommendations. Accordingly, defendant's motion to suppress (DE #26) is denied.

SO ORDERED, this the 5th day of November, 2008.

LOUISE W. FLANAGAN
Chief United States District Judge

7